UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JAMES DEAN WILKS,<br><br>            Plaintiff,<br><br>  v.<br><br>R. BECKMAN,<br><br>            Defendant.<br>_____ | CASE NO. C04-1731 RSL-MJB<br><br>REPORT AND<br>RECOMMENDATION |

COMES NOW on the Defendant's Motion for Summary Judgment and the Plaintiff's Motion for Summary Judgment. The Court has reviewed the pleadings and responses of both parties and makes the following recommendation that Defendant's Motion for Summary Judgment be GRANTED and Plaintiff's Motion for Summary Judgment and Appointment of *Pro Bono* Counsel be DENIED.

I. BACKGROUND

Plaintiff's Title 42 Section 1983 claim for abridgment of his civil rights arises from the following assertions found in his Complaint and his response to the Defendant's dispositive motion.

> On July 29, 2004 Defendant, Officer R. Beckman came to the [Wilks's] cell at the regional Justice Center and informed Wilks that "if he didn't stop singing," he would be racked back! Dkt. # 6. Wilks stopped singing, and filed a grievance with Sergeant Dryer, objecting to the treatment by Officer Beckman. The next day his grievance was returned to him with a response from Sgt. Dryer stating "he could sing at a level that stays in your cell and that it does not carry across the unit." Dkt. 38. Later Officer Beckman summoned Wilks to the staff station and

REPORT AND RECOMMENDATION - 1

said: " I don't care what Sgt. Dryer said, you're not going to sing in your cell or I'll move you to a more restrictive unit!"  A verbal argument ensued between Beckman and Wilks, and Plaintiff was given 10 days in 'deadlock' for rule violations.  Dkt. # 38

Plaintiff is seeking $1,500 for each day he was "locked down," as violations of his First Amendment right to freedom of speech.  Dkt. # 6.

II. PARTIES POSITIONS

On October 13, 2005, Defendant R. Beckman, moved for summary judgment asserting that Wilk's right to sing in his cell was *not* abridged by his enforcement of rules against nuisance activity.  Beckman relies upon *Turner v. Safley*, 482 U.S. 78 (1987).  Dkt. # 31, 32.  Plaintiff, James Wilks, opposes this motion and seeks an opportunity to discuss the issue with opposing counsel and possible settlement.  Dkt. # 38.

In addition, Plaintiff's Motion for Summary Judgment and for Pro Bono Counsel assert that the failure to submit a joint pre-trial statement has prejudiced him.  The prejudice he claims, is being forced to  file a *non-joint* pre-trial statement because he was unable to confer with defense counsel.  Dkt. # 42.  Beckman opposes this motion and asserts there are no legal grounds upon which to grant summary judgment.  Dkt. # 43.

III. DISCUSSION

A. Summary Judgment

Defendant Beckman has moved for summary judgment pursuant to Federal Rule of Civil Procedure 56.  "One of the primary purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses."  *See Celotex v. Catrett*, 477 U.S. 317, 323-24 (1986).  Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  *See Swayze v. United States*, 785 F.2d 715, 717 (9th Cir. 1986) (citing Fed. R. Civ. P.

REPORT AND RECOMMENDATION - 2

56(c)).  The standard provided by Rule 56 requires not only that there be *some* alleged factual disputes between the parties, but also that there be *genuine* issues of *material* fact.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  "The summary judgment inquiry thus scrutinizes the plaintiff's case to determine whether the plaintiff has proffered sufficient proof, in the form of admissible evidence, that could carry the burden of proof of [the] . . . claim at trial."  *See Mitchell v. Data General Corp.*, 12 F.3d 1310, 1315 (4th Cir. 1993).

To meet the initial burden under Rule 56, "the party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."  *See Celotex*, 477 U.S. at 324.  The burden shifts to the non-movant only if the moving party has established that there is a lack of a genuine issue of material fact.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).  If the movant meets this burden, then summary judgment will be granted unless there is significant probative evidence tending to support the opponent's legal theory.  *See First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 290 (1968).

B.  Freedom of Speech, Rule 310, Nuisance Activity

For the preservation of internal order and discipline, and the maintenance of security, Officer Beckman asserts he has legitimate grounds to restrict inmate speech.  *Procunier v. Martinez,* 416 U.S. 396, 412, (1974).  He argues that Wilks violated the policy against "loud singing" which is defined as nuisance activity when it disrupts jail order or interferes with staff duties.  Dkt. # 32.

REPORT AND RECOMMENDATION - 3

*Turner* permits prison regulations that restrict speech, but only if they are reasonably related to legitimate penological interests. Its test is as follows:

> First, there must be a "valid, rational connection" between the prison regulation and the legitimate government interest put forward to justify it. *Block v. Rutherford, supra,* 486 U.S., at 586, 104 S.Ct., at 3232. Thus a regulation cannot be sustained where the logical connection between the regulation and the asserted goal is so remote as to render the policy arbitrary or irrational. . . .A second factor relevant in determining the reasonableness of a prison restriction . . . is whether there are alternative means of exercising the right that remain open to prison inmates. Where "other avenues" remain available for the exercise of the asserted right, see *Jones v. North Carolina Prisoners' Union, supra,* 433 U.S., at 131, 97 S.Ct., at 2540. Courts should be particularly conscious of the "measure of judicial deference owed to corrections officials . . . in gauging the validity of the regulation." *Pell v. Procunier, supra,* 417 U.S., at 827, 94 S.Ct., at 2806 . . . . A third consideration is the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally. . . .Finally, the absence of ready alternatives is evidence of the reasonableness of a prison regulation. See *Block v. Rutherford, supra,* 468 U.S., at 587, 104 S.Ct., at 3233. By the same token, the existence of obvious, easy alternatives may be evidence that the regulation is not reasonable, but is an "exaggerated response" to prison concerns.
> 482 U.S. at 89-90.

Rule 310 specifically reads: "Making continued loud noises, shouting, yelling, singing, kicking, banging or any other persistent activity which disrupts order, *or* interfering with staff in the performance of their duties." Dkt. # 32 at Ex. #3.

Plaintiff acknowledges that the rule to be applied is whether the rules are reasonably related to legitimate penological interests. He answers the *Turner* test as follows:

> 1. Plaintiff contends that a prison regulation prohibiting an inmate from singing in an enclosed cell at normal levels is "not reasonable" and therefore not related to penological interests.
> 2. In John Unit at the Kent Regional Justice Center, there is "nowhere" in the entire unit, to include the outside yard, where an inmate can sing songs privately, except in his cell, behind closed doors. Therefore, there <u>is not</u> <u>'any' alternative means</u> to exercise the constitutional right to sing love songs, at the Kent Regional Justice Center.

REPORT AND RECOMMENDATION - 4

> 3. An inmate singing in a private cell at normal levels does not effect [sic] the allocation of prison resources.
> 4. A prison regulation prohibiting inmates from singing in their cells at normal levels is not a "<u>reasonable response</u>" to prison concerns, when there is no alternative means to exercise that right. Dkt. # 38.

Moreover, Wilks asserts that there are genuine issues of fact remaining and that Beckman has not met the legal standard for summary judgment disposition.

      The defense first points to Wilks's own concession that he violated Rule 310 by his guilty plea at the rule infraction hearings. Dkt. # 32 at Ex. # 2. It is true that the record of the Rule Disciplinary Hearing held the next day demonstrates that Wilks entered pleas of guilty to the infractions, specifically Rule 310. Dkt. #32. Inasmuch as his plea of guilty allows the inference that he knew he singing was too loud, there is no genuine issue of fact whether the infraction occurred, or whether he sang continuously disrupting order or interfering with staff duties. Accordingly, defendant argues summary judgment is appropriate. The record also shows that Wilks was disciplined for ten days, which while perhaps disproportionate to the offense, alone it is not a cognizable claim under Title 42 §1983.

    Additionally, Defendant Beckman urges the Court to agree that the nuisance regulation promotes order, discipline and institutional security; therefore, it is reasonably related to legitimate penological interests. Using the *Turner* factors, the Court is not persuaded by Wilks when he argues that there are no alternatives to singing love songs, other than in your cell. The policy to curb *continuous singing*–whether love songs or not–is related to maintaining order. Implicit in the rule to maintain order over nuisance behaviors is the recognition that certain behaviors have "ripple" effects. In these matters the courts have deferred to corrections officials. *Id*. at 90-91.

      Where the Wilks has the burden of showing the regulation or rule to be unreasonable, he may also point to an alternative that fully accommodates, but results in

REPORT AND RECOMMENDATION - 5

*de minimis* costs to valid penological interests. *Id*. at 91. No such showing has been made. Accordingly, Rule 310 does not unconstitutionally abridge a prisoner's free speech rights and summary judgment in favor the Defendant Beckman should be granted.

### C. Plaintiff's Motion for Summary Judgment

Plaintiff's Motion for Summary Judgment and for Pro Bono Counsel are intertwined. He asserts that the failure to submit a joint pre-trial statement has prejudiced him, causing him to file a non-joint pre-trial statement and that he needs counsel to confer with defense counsel. Dkt. # 42. The basis for Summary Judgment is not distinguishable from the Motion for Appointment of Counsel and both should be denied as without legal merit. *See also*, this Court's previous Order Denying Appointment of Counsel. Dkt. # 35.

## IV. CONCLUSION

I recommend that Defendant's Motion for Summary Judgment (Dkt. # 31) be GRANTED; and Plaintiff's Motions for Summary Judgment and Appointment of Counsel (Dkt. # 43) be DENIED. A proposed order accompanies this Report and Recommendation.

Dated this day the 26th of May 2006.

*/s/ M. Benton*
MONICA J. BENTON
United States Magistrate Judge

REPORT AND RECOMMENDATION - 6